**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 04-0619 (JR) |
| | : |
| DISTRICT OF COLUMBIA, | : |
| | : |
| Defendant. | : |

**<u>MEMORANDUM</u>**

On April 15, 2004, the United States filed a two-count complaint against the District of Columbia for violations of the Fair Housing Act, 42 U.S.C. §§ 3601-3619.  Count One alleges discrimination on the basis of disability arising from actions (and inaction) by the District that blocked Father Flanagan's Boys Home ("Boys Town") from operating proposed group homes, in violation of Sections 3604(f)(1) & (2) of the Fair Housing Act.  Count Two alleges that a number of the District's zoning regulations violate the Act by imposing more stringent requirements on housing for the disabled than are imposed on housing for persons without disabilities.  The first claim, of intentional discrimination against Boys Town on the basis of disability in violation of the Fair Housing Act, was tried before a jury from November 27 to December 8, 2006.  The jury failed to reach a verdict, and I declared a mistrial.

Prior to the start of the trial, I determined that the challenge to the zoning regulations asserted in Count Two

presented issues for the Court, and not for the jury.  (Pre-trial
Hr'g Tr. 7, Oct. 17, 2006).  During the trial, I determined that
the United States' claims that the District violated the Fair
Housing Act by denying Boys Town's requests for reasonable
accommodation would be decided by the Court.[1]  (Trial Tr. 82,
Dec. 5, 2006).  On these non-jury claims, the United States now
moves for judgment as a matter of law pursuant to Federal Rules
of Civil Procedure 52 and 58.  Declaratory and injunctive relief
are sought.

## I. Background

Relevant events began on February 10, 2000, when Boys
Town purchased property that it configured into six record lots
in the 1300 block of Pennsylvania and Potomac Avenues, S.E., in
Washington, D.C.  These lots are located in a district zoned C-2,
a municipal designation that allows both commercial and
residential development.[2]  Boys Town intended to build a single
structure on each lot.  Four homes were planned for the first

---

[1] The jury trial focused on claims for damages.  Because the
reasonable accommodation claims were unaccompanied by proof of
damages, I decided that these claims would be decided alongside
the United States' other claims for equitable relief.  (Trial Tr.
63, Dec. 5, 2006).

[2] The District's zoning regulations establish permissible
uses for each district.  Zones primarily intended for residential
use are designated as "R" zones.  R-1 districts have the most
restrictive regulations while zones R-2 through R-5 are
progressively less restrictive.  Commercial zones are designated
with a "C."  Uses permitted as of right in residential zones are
generally permitted as of right in commercial districts.

four lots, each to house six abused and neglected children and two staff caretakers.  [Ex. A, Dkt. # 185].  A short-term shelter for up to sixteen children was planned for the fifth lot.  The sixth parcel was to be the site of a non-residential administration building.

A. The District's Zoning Scheme

Under the District's zoning regulations, the four homes and short-term shelter that Boys Town planned to build were classified "community-based residential facilities" ("CBRFs"), an umbrella term that includes seven different subcategories, each with its own zoning requirements.  See 11 DCMR § 199.1.  The homes and shelter that Boys Town planned to operate are a type of CBRF called a "youth residential care home" ("YRCH"), defined as "a facility providing safe, hygienic, sheltered living arrangements for one (1) or more individuals less than eighteen (18) years of age, not related by blood, adoption, or marriage to the operator of the facility, who are ambulatory and able to perform the activities of daily living with minimal assistance."  Id.  Other types of CBRFs include rehabilitation homes for adjudicated felons and emergency shelters for the homeless.  While CBRFs, including YRCHs, may house persons with disabilities, these zoning classifications neither require nor assume that the persons living in such a facility are handicapped.

Generally speaking, the location and number of children to be housed in a YRCH determine which, if any, additional zoning restrictions apply.  A YRCH housing six or fewer children, plus staff, is permitted as a matter of right in all residential, mixed use, and commercial zones.  11 DCMR § 201.1(n)(1).  A YRCH housing seven or more children is also permitted as a matter of right in zones R-5, CR, C-1, and C-2, but is subject to a spacing requirement: there can be no other CBRFs housing 7 or more people within 500 feet.  11 DCMR §§ 350.4(f), 601.2(b), 701.3, & 721.5. For a YRCH in the R-5, CR, or C-2 zones to house 16 to 25 children, the facility must apply for and receive explicit permission, called special exception approval, from the Board of Zoning Adjustment.  11 DCMR § 732.1.  Public comment and feedback before the BZA is required. As described by the BZA, the special exception process requires the Board to "consider important public interest concerns, including the public need for the proposed use, as well as potential harm to the public."  Tr. Ex. 164 at 17.  YRCHs housing 16 to 25 youth are also subject to spacing requirements and occupancy caps.  11 DCMR § 732.1.

Youth residential care homes specifically intended to house disabled children are not subject to these same regulations, however.  Two regulations, 11 DCMR § 330.5(I) and 11 DCMR § 201.1(o), provide that spacing, occupancy, and special exception requirements do not apply to CBRFs for the disabled

- 4 -

operating in the R-1 to C-2 zones.  Section 330.5(I) was adopted in 1997 as a result of a settlement agreement between the District and the United States in a previous Fair Housing Act suit.  [Ex. B-27, Dkt. # 174].  It states that

> The following uses shall be permitted as a matter of right in an R-4 District:
>
> . . .
>
> (I) Community-based residential facility; provided that, notwithstanding any provision in this title to the contrary, the Zoning Administrator has determined that such community-based residential facility, that otherwise complies with the zoning requirements of this title that are of general and uniform applicability to all matter-of-right uses in an R-4 District, is intended to be operated as housing for persons with handicaps.  For purposes of this subsection, a handicap means, with respect to a person, a physical or mental impairment which substantially limits one or more of such person's major life activities, or a record of having, or being regarded as having, such an impairment, but such item

> does not include current illegal use of, or
> addiction to, a controlled substance.

11 DCMR § 330.5(I).  A series of interlocking regulations provide
that all uses permitted as a matter of right in R-4 districts are
also permitted as a matter of right in the R-5, C-1 and C-2
zones.  See 11 DCMR §§ 350.4, 701.2, & 721.1.

Section 201.1(o) is substantially similar in language
and effect and provides that

> The following uses shall be permitted as a matter of
> right in R-1 Districts:
>
> (o) Community-based residential facility for
> occupancy by persons with handicaps;
> provided, that the determination of
> handicapped facility shall be made according
> to the reasonable accommodation criteria in
> 14 DCMR § 111.  "Procedures for Reasonable
> Accommodation under the Fair Housing Act."
> For purposes of this subsection, a "handicap"
> means, with respect to a person, a physical
> or mental impairment which substantially
> limits one or more or such person's major
> life activities, or a record of having, or
> being regarded as having, such an impairment,
> but such term does not include current,

- 6 -

illegal use of or addiction to a controlled
substance.

11 DCMR § 201.1.  Again, by operation of numerous interlocking
provisions, the effect of this regulation is to provide that
CBRFs for disabled persons are permitted as a matter of right,
not just in the R-1 zone, but also in R-2, R-3, R-4, R-5, C-1 and
C-2 districts.  See 11 DCMR §§ 320.3(a), 330.3(a), 330.5(a),
350.4, 701.2, & 721.1.

B. Application of Zoning Regulations to Boys Town

On December 19, 2000, Boys Town requested separate
building permits for the four YRCHs, each of which was to house
six children and a married, staff couple.  To repeat, in the C-2
zone where these facilities were to be built, YRCHs serving six
or fewer children are permitted as a matter of right without
regard to the disability status of the children to be served.  11
DCMR § 201.1(n)(1).  Such facilities are not subject to any
spacing or special exception requirements.  As Boys Town
understood it, because the four Pennsylvania Avenue YRCHs were to
be built on separate lots, each would be treated under the
District's zoning code as separate matter-of-right uses.  Boys
Town's reasoning relied on a decision issued by the Board of
Zoning Adjustment on October 3, 2000, that dealt with similar
YRCH facilities operated by Boys Town on Sargent Road.  In its
Sargent Road decision, the BZA had explained that four YRCHs on

four separate lots of record, each housing six children, would be permitted as a matter of right.  [Ex. A, Dkt. # 185].

The DCRA issued the four permits on September 6, 2001, after determining that each was allowed as a matter of right.  By this point, organized community opposition to the Boys Town project was well underway.  More than a year earlier, on July 13, 2000, Advisory Neighborhood Commission 6B ("ANC 6B") had held a public hearing about the development and adopted a resolution, "Opposition to Boys Town USA facility on the 1300 Block of Pennsylvania Avenue, S.E.," stating that "the vulnerable children who will be housed at the Boys Town facility require a safe and secure setting" that was supposedly not provided by the location chosen.  Around the same time, neighborhood activists had formed Southeast Citizens for Smart Development ("SCSD"), an organization that had as its primary purpose preventing the construction and establishment of the proposed Boys Town facilities.  [Ex. B-8, Dkt. # 169].

On September 12, 2001, ANC 6B and SCSD appealed the DCRA's issuance of building permits to the Board of Zoning Adjustment, arguing that the four YRCHs should be treated as one "facility" housing 24 children and therefore be subject to the spacing and occupancy cap regulations in 11 DCMR § 721.5 as well as the special exception requirements contained in 11 DCMR § 732.1.  Boys Town argued to the BZA that, consistently with its

Sargent Road decision, the permits should be treated as four separate matter-of-right uses. Boys Town also asserted that "[t]he majority of the children served by Boys Town qualify as handicapped under the Fair Housing Act" and that, in accordance with 11 DCMR § 201.1(o), "the homes . . . are permitted as a matter of right, without reference to spacing restrictions or controls on the population size of the number of children permitted." Tr. Ex. 138 at 7. At the hearing before the BZA, however, the Board suppressed as "irrelevant" all argument and testimony regarding the children's handicapped status and the requirements of the Fair Housing Act. Tr. Ex. 164.

On June 21, 2002, the BZA ruled against Boys Town. It held that the four proposed group homes were one YRCH serving 24 youths and concluded that Boys Town would have to receive special exception approval under Section 732.1(a) before it could operate the facility as a YRCH. Boys Town's citation of 11 DCMR § 201.1(o) – which makes the special exception process as well as spacing and occupancy caps inapplicable to CBRFs housing persons with handicaps - was not mentioned in the BZA ruling. In explaining why it had refused to hear evidence regarding the children's disabilities, the Board stated only that "there is no evidence that [] Boys Town has [] sought 'reasonable accommodation' under District of Columbia regulations

implementing the Fair Housing Act."  Tr. Ex. 164 at App. B.  All
four building permits were revoked.

Following this decision, Boys Town applied for four new
building permits from the DCRA, changing the proposed use from
"four YRCHs" to "four single-family homes."  According to Boys
Town's lawyer, this decision was made so that construction on the
buildings could go ahead "solely and only to minimize damage to
the buildings that were partially completed."  [Ex. C at 17, Dkt.
# 185].  On July 8, 2002, the DCRA approved the revised building
permits.  A few months later, on October 11, 2002, Boys Town
requested that the DCRA grant it a reasonable accommodation from
Section 732.1 by exempting it from the special exception process.

In support of its reasonable accommodation request,
Boys Town submitted an affidavit from Dr. Michael Handwerk, the
Director of Clinical Services at Boys Town's long-term care
facilities in Boys Town, Nebraska.  [Ex. B-47, Dkt. # 187].
Dr. Handwerk's affidavit described a study he conducted of
children in Boys Town's residential facilities in Nebraska and
recited his determination from that study that a majority of
those children had disabilities.  Handwerk concluded that
"reliable predictions about the mental and emotional health and
functioning abilities of the children to be served in the long-
term facilities at Pennsylvania Avenue can be made by considering
the data concerning the mental and emotional health and

- 10 -

functioning abilities of the children in the long-term facilities in Boys Town, Nebraska." Id. at ¶ 5 (emphasis added).  The final paragraphs of the affidavit, id. at ¶¶ 9-10, inadvertently stated that a majority of the children at the long term facilities at the "Sargent Road property," rather than at Pennsylvania Avenue, would have disabilities.

On November 22, 2002, the DCRA denied the requested accommodation, making no mention in the written decision of either 11 DCMR § 330.5(I) or 11 DCMR § 201.1(o).  The DCRA gave two reasons in support of the denial: first, that Boys Town's request "did not describe any condition or impairment that meets the definition of handicapped as defined in the Fair Housing Act"; and second, that "the Director does not have the authority to grant a waiver from compliance with the zoning regulations of the District of Columbia." Director's Decision and Notice, Tr. Ex. 196 at 3.  Months later, after the District was notified by the Department of Justice that legal action by the United States was being contemplated, the DCRA attempted to more fully explain its rationale for denying the requested accommodation.  On June 24, 2003, Karen Edwards, DCRA General Counsel, advised Boys Town by letter that the October 2002 reasonable accommodation request had been denied because it was "not supported [] with sufficient information to allow DCRA to approve the request." [Ex B-27, Dkt. # 174].  Boys Town's request was found wanting

because of Hardwerk's error referring to children at Sargent Road
rather than at Pennsylvania Avenue.  According to Edwards, the
DCRA had no grounds to grant the request since all the Hardwerk
affidavit said about the children at Pennsylvania Avenue was that
they would be "abused, neglected, and abandoned."  The DCRA's
supposed problem was that the legally significant diagnosis --
that the majority of children would likely have "mental and/or
emotional disorders which substantially limit one or more of the
major life activities" -- directly referred, not to the children
at Pennsylvania Avenue, but only to those served at Sargent Road.
Edwards' letter went on to explain that if Boys Town properly
supported its contention that the Pennsylvania Avenue facilities
were intended to house handicapped children, such housing would
be permitted as a matter of right under 11 DCMR § 330.5(I).

On July 23, 2003, shortly after receiving Edwards'
letter, Boys Town re-submitted its reasonable accommodation
application to the DCRA along with a new version of Hardwerk's
affidavit that corrected the mistaken reference to the Sargent
Road facility.  This new affidavit was essentially the same as
the previous one in all other respects.  On September 18, 2003,
the DCRA approved the reasonable accommodation request,
concluding that Boys Town had now "established that the subject
housing will be for handicapped persons."  Tr. Ex. 216 at 2.
Having shown that the YRCH would serve handicapped youth, the

DCRA agreed that, pursuant to 11 DCMR § 330.5(I), Boys Town would not be required to apply for special exception approval from the BZA.

In December 2003, SCSD and ANC 6B once again filed an appeal with the BZA challenging the DCRA's decision to issue certificates of occupancy to Boys Town.  [Ex. B-30, Dkt. # 169]. That appeal was pending, undecided, when Boys Town gave up on its Pennsylvania Avenue plans and sold the property on October 12, 2004.

Boys Town has settled its claims against the District, but the United States' claims for declaratory and injunctive relief are unaffected by the settlement.[3]

## II. Analysis

Three kinds of claims can be brought for disability discrimination in violation of the Fair Housing Act: "(1) intentional discrimination claims (also called disparate treatment claims) and (2) disparate impact claims, both of which arise under § 3604(f)(2), and (3) claims that a defendant refused to make 'reasonable accommodations,' which arise under § 3604(f)(3)(B)." Cmty. Servs. v. Wind Gap Mun. Auth., 421 F.3d 170, 176 (3d Cir. 2005); see also Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 573 (2d Cir. 2003).  In its motion for

---

[3] The United States no longer asks for the imposition of civil penalties.  [Dkt. # 53].

declaratory judgment, the United States asserts that the District
unlawfully denied two requests for reasonable accommodation (the
third type of claim) and that nine of the District's zoning
regulations impose disparate treatment on the basis of disability
(the first type of claim).[4]

A. Claims for Reasonable Accommodation

The Fair Housing Act provides that "discrimination
includes . . . a refusal to make reasonable accommodations in
rules, policies, practices, or services, when such accommodations
may be necessary to afford such person equal opportunity to use
and enjoy a dwelling."  42 U.S.C. § 4604(f)(3)(B).  In order to
make out a claim for reasonable accommodation, the plaintiff must
prove: (1) the existence of a handicap as defined in 42 U.S.C.
§ 3602(h); (2) that defendants knew or reasonably should have
known of the handicap; (3) that the accommodation "may be
necessary" to afford handicapped persons an equal opportunity to
use and enjoy the dwelling; and (4) that defendants refused to

---

[4] The United States initially challenged ten of the
District's zoning regulations.  The tenth regulation challenged,
11 DCMR § 3203.1, required CBRFs housing six or fewer persons to
obtain a certificate of occupancy.  The United States urged that
this requirement was facially discriminatory.  The Court need not
reach the merits of that argument, however, because on
January 25, 2008, the District of Columbia amended the challenged
regulation so that CBRFs serving six or fewer handicapped persons
are no longer required to obtain certificates of occupancy.  See
[Dkt. # 54].  The United States' challenge to 11 DCMR § 3203.1 is
moot, as is the District's motion for a stay pending a final
rulemaking [Dkt. # 49].

make the requested accommodation.  <u>See</u> <u>United States v.</u>
<u>California Mobile Home Park Mgmt. Co.</u>, 107 F.3d 1374, 1380 (9th
Cir. 1997).

The United States' claims for unlawful denial of
requests for reasonable accommodation are quite specifically
focused on two occasions: first, June 21, 2002, when the Board of
Zoning Adjustment ruled that the four group homes should be
treated as a single YRCH serving 24 youths and would need to
apply for a special exception under Section 732.1; and, second,
November 22, 2002, when the DCRA denied Boys Town's request not
to be subject to Section 732.1.

<u>1. Request Before the BZA</u>

The request that Boys Town made before the BZA was
straightforward.  In response to the appeal brought by ANC 6B and
SCSD, Boys Town argued that the DCRA had properly treated each 6-
youth home as a separate matter-of-right use.  However, if the
BZA disagreed and concluded that the four homes were actually a
single 24-youth facility, Boys Town requested that the BZA apply
11 DCMR § 201.1(o) and relieve it from having to receive special
exception approval or abide by otherwise applicable spacing and
occupancy caps.

The District argues that the request was improper
because the BZA "is simply not empowered to grant reasonable
accommodations and could only decide the legal issues before it

- 15 -

on administrative appeal." Opp. to Mot. for Decl. Jgmt. at 28.
[Dkt. 44].  According to the District, the United States' claim
fails because Boys Town had not applied for a reasonable
accommodation from the DCRA in accordance with 14 DCMR § 111.
This argument is unpersuasive.

Boys Town had no need to make a reasonable
accommodation request with the DCRA prior to the BZA appeal,
because the DCRA had already agreed that the housing was
permitted as of right, without regard to the children's
handicapped status.  The issue before the BZA, however, was
whether Boys Town's four homes truly were separate matter-of-
right uses or whether they should instead be treated as a single
facility subject to spacing and occupancy restrictions and
special exception approval pursuant to Section 732.1.  Sections
201.1(o) and 330.5(I) provided clear answers to the question
whether Section 732.1 could properly be applied to a 24-person
CBRF: yes, if those served were not disabled, no, if the
residents were disabled.  The District is correct that, in
general, the DCRA is the body to whom a request for reasonable
accommodation is properly lodged in the first instance, see 14
DCMR § 111, but no request to the DCRA was necessary for Section
201.1(o) or Section 330.5(I) to apply.  Section 201.1(o) was
cited to the Board, and the Board had the authority -- the
responsibility -- to recognize and apply it.  The BZA's failure

to apply clearly applicable regulations resulted in the denial of equal opportunity to use and enjoy a dwelling, in violation of Section 4604(f)(3)(B) of the Fair Housing Act.  The argument that the BZA did not "refuse" to make reasonable accommodation because none was requested in accordance with Section 111 is unavailing. A handicap existed, the BZA knew of the handicap (Boys Town specifically advised the BZA of their handicaps and cited Section 201.1(o)), and the BZA refused to listen to evidence or argument on the point.  Nothing more is required to establish the 4604(f)(3)(B) violation.  <u>California Mobile Home Park Mgmt. Co.</u>, 107 F.3d at 1380.  In this case, Boys Town's citation of 11 DCMR § 201.1(o) to the BZA is the functional equivalent of a request for reasonable accommodation made under Section 111.

### 2. Request Before the DCRA

Before the DCRA, Boys Town made an express request for reasonable accommodation from the operation of Section 732.1 on October 11, 2002.  That request was denied on November 22, 2002, with the explanation that "the Director concludes that Father Flanagan's did not describe any condition or impairment that meets the definition of handicapped as defined in the Fair Housing Act" and that "the Director does not have the authority to grant a waiver from compliance with the zoning regulations of the District of Columbia."  Tr. Ex. 196.

The hypertechnical reason for this denial was not explained until months later, when DCRA General Counsel Karen Edwards pointed to the Hardwerk affidavit's mistaken reference to housing on Sargent Road.  It is true that Ms. Edwards then showed Boys Town how to fix the asserted problem (fix the Hardwerk affidavit) but an FHA violation is not cured by subsequent conduct.  The Act is violated when a reasonable accommodation is first denied, regardless of remedial steps that may be taken later.  See Bryant Woods Inn, Inc., 124 F.3d at 602.  Denial of a reasonable accommodation "can be both actual or constructive, as an indeterminate delay has the same effect as an outright denial."  Groome Resources Ltd., LLC v. Parrish of Jefferson, 234 F.3d 192, 199 (5th Cir. 2000).

The DCRA's November 22 assertion that it lacked the "authority to grant a waiver from compliance with the zoning regulations" was wrong -- the District's reasonable accommodation provision, 14 DCMR § 111, plainly grants this authority to the Director of the DCRA -- and nonsensical, since, with Sections 330.5(I) and 201.1(o) on the books, Boys Town did not need a "waiver from compliance with the zoning regulations."  DCRA's supposed reliance on the error in the Hardwerk affidavit falls somewhere between obtuse and disingenuous.  Karen Edwards' explanation, offered seven months after DCRA's rejection of the request, and then only under the pressure of a Justice Department

inquiry, suggests that the proper locus is toward the disingenuous side of the range.  If DCRA was unable to decipher whether the children to be served on Pennsylvania Avenue would be handicapped because of confusion created by the Hardwerk affidavit, the proper course of action was not simply to deny the request.  14 DCMR § 111 explicitly provided that, "[i]f necessary to reach a decision on the request for reasonable accommodation, the Director may request further information from the applicant consistent with the Act, specifying in detail the information required."  DCRA's initial denial, and the delay that resulted from it, unlawfully denied reasonable accommodation.  See Jankowski Lee & Assocs. v. Cisneros, 91 F.3d 891, 895 (7th Cir. 1997) ("If a landlord is skeptical of a tenant's alleged disability . . . , it is incumbent upon the landlord to request documentation or open a dialogue" prior to denying the request).

B. Claims for Disparate Treatment

The United States also moves for a judgment declaring that nine provisions of the District's zoning regulations, 11 DCMR §§ 350.4(f), 358, 601.2, 616.1, 701.2, 701.3, 711.1, 721.5, & 732.1, "violate the Fair Housing Act as applied to YRCHs intended as housing for persons with disabilities." Mot. for Decl. Jgmt. at 2.  Where applicable, each of these provisions impose occupancy, spacing, and/or special exception requirements on YRCHs.  When the United States first brought this action, it

asserted that the challenged provisions were <u>facially</u>
discriminatory because they "treat housing classified as CBRFs
for persons with disabilities less favorably than housing for
persons without disability, without sufficient justification."
[Dkt. # 185 at 28].  The United States largely abandoned that
theory after learning that 11 DCMR § 330.5(I) and 11 DCMR
§ 201.1(o) specifically exempt community-based residential
facilities from occupancy, spacing, and special exception
requirements that would otherwise apply in the R-1 to C-2 zones.
The United States now urges that the Fair Housing Act is violated
whenever these nine inapplicable provisions are applied to YRCHs
intended for the disabled.  Such a sweeping conclusion is
unwarranted.  The Fair Housing Act is not automatically violated
whenever an inapplicable zoning regulation is applied to housing
for the disabled.  Such misapplication could be the result of a
simple mistake.  Misapplication could also be purposeful, and,
when accompanied by other probative facts, sound in intentional
discrimination.  <u>Cf.</u> <u>Vill. of Arlington Heights v. Metro Hous.</u>
<u>Dev. Corp.</u>, 429 U.S. 252, 267 (1977).  This court cannot declare
in advance that every misapplication of these regulations will be
purposeful and invidious.  Such facts must be proven on a case-
by-case basis rather than assumed across the board.

### III. Conclusion

While the United States is entitled to declaratory and injunctive relief based on the two occasions on which the District unlawfully denied Boys Town's requests for reasonable accommodation, its broad challenge to the District's zoning regulations has failed.  On this showing, the United States has not demonstrated a need for the sort of sweeping, specific injunctive relief that it has requested.  Instead, the appropriate relief here is a declaratory judgment and a general injunction enjoining the District from violating the Fair Housing Act's requirement that the disabled be provided equal access to housing through reasonable accommodations.

*   *   *   *   *

The United States' motion for declaratory judgment and injunctive relief [Dkt. # 39] is **granted in part** and **denied in part**.  An appropriate order accompanies this memorandum.

JAMES ROBERTSON
United States District Judge